IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

UNITED STATES OF AMERICA,    )    CR 14-00374 LEK
)
        Plaintiff,     )
)
    vs.            )
)
JULIAN KEALAKEKUA,      )
)
        Defendant.     )
_____ )

**ORDER DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE,
SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL
<u>CUSTODY AND DENYING A CERTIFICATE OF APPEALABILITY</u>**

Before the Court is pro se Defendant/Petitioner
Julian Kealakekua's ("Kealakekua" or "Defendant") Motion under 28
U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a
Person in Federal Custody ("§ 2255 Motion"), filed on December 5,
2016. [Dkt. no. 96.] Plaintiff/Respondent the United States of
America ("the Government") filed its response to the § 2255
Motion ("Response") on April 3, 2017, and Kealakekua filed his
reply on May 1, 2017. [Dkt. nos. 113, 114.] Kealakekua's § 2255
Motion is hereby denied, and a certificate of appealability is
also denied, for the reasons set forth below.

**<u>BACKGROUND</u>**

On April 2, 2014, Kealakekua was indicted for nineteen
counts of bank fraud, in violation of 18 U.S.C. § 1344 and 18

U.S.C. § 2.[1]  [Dkt. no. 1.]  The Indictment alleged Kealakekua
created and operated various companies and created websites which
made it appear the companies were established and profitable.  He
recruited individuals to be investors or employees and induced
them to apply for bank loans.  The proceeds were to be turned
over to him for business operations, but Kealakekua used the
proceeds for his personal purposes.  [Id. at ¶¶ 2-3.]

Kealakekua initially entered a plea of not guilty,
[Minutes, filed 7/10/14 (dkt. no. 10), at 1,] but, on
September 30, 2015, he withdrew his plea and entered a plea of
guilty to Counts 11 and 17, pursuant to a plea agreement.  [Dkt.
nos. 55 (Minutes), 56 (Memorandum of Plea Agreement ("Plea
Agreement")).]  In the Plea Agreement, Kealakekua acknowledged
that, by pleading guilty, he was waiving certain rights and his
attorney had explained those rights and the consequences of the
waiver to him.  [Plea Agreement at ¶¶ 16-17.]  At all times
relevant to the § 2255 Motion, Thomas Otake, Esq., represented
Kealakekua.[2]  [CJA 20 form, filed 5/4/15 (dkt. no. 41).]

Kealakekua's sentencing hearing was held on
February 29, 2016.  [Minutes, filed 2/29/16 (dkt. no. 67).]  The

_____

[1] Kealakekua was indicted under the name Clarence Hobbs, who
was "also known as Julian McClinton, Julian Kealakekua and Julian
Brandt."  [Indictment at ¶ 1.]

[2] The § 2255 Motion refers to Mr. Otake as Kealakekua's
"trial counsel."  [Mem. in Supp. of § 2255 Motion at 1.]

Plea Agreement was accepted and the factual findings in the presentence report were adopted. ["Presentence Investigation Report (2)" ("PSR"), filed 2/17/16 (dkt. no. 63).] The PSR found that Kealakekua's base offense level was seven, with: a sixteen-level increase because Kealakekua was responsible for total loss of $1,531,430.81; a two-level increase because the offense involved ten or more victims; and another two-level increase because the offense involved sophisticated means, conducted or caused by Kealakekua. His adjusted offense level was therefore twenty-seven. [Id. at ¶¶ 104-27.] After a total decrease of three levels for acceptance of responsibility, Kealakekua's total offense level was twenty-four. [Id. at ¶¶ 113-15.] His criminal history category was V. [Id. at ¶ 126.] His imprisonment range under the United States Sentencing Guidelines ("U.S.S.G." or "the Guidelines") was therefore 92 to 115 months, and his range for supervised release was 2 to 5 years. [Id. at ¶¶ 162, 166.] The PSR noted that a total of $291,615.31 in restitution was due to six individual victims and four banks. [Id. at ¶ 174.]

Kealakekua was sentenced to 84 months of imprisonment, and 5 years of supervised release, and he was ordered to pay $291,615.31 in restitution, and $200 in special assessments. This Court granted the Government's oral motion to dismiss Counts 1-10, 12-16, 18, and 19. [Minutes, filed 2/29/16 (dkt. no. 67).] The Judgment in a Criminal Case was filed on March 1,

2016. [Dkt. no. 68.]

Kealakekua filed his Notice of Appeal on March 4, 2016. [Dkt. no. 70.] Lars Isaacson, Esq., represented Kealakekua on appeal. [Dkt. nos. 73 (order granting Mr. Otake's motion to withdraw); 74 (order appointing Mr. Isaacson).] According to the § 2255 Motion, Kealakekua argued on appeal that his criminal history score was improperly calculated. [§ 2255 Motion at 3.] On July 20, 2016, the Ninth Circuit granted the Government's motion to dismiss the appeal in light of the valid appeal waiver. [Dkt. no. 93.] The Ninth Circuit's Mandate was issued on October 21, 2016. [Dkt. no. 95.]

In the § 2255 Motion, Kealakekua argues that Mr. Otake rendered ineffective assistance by: 1) failing to argue that the clear and convincing evidence standard applied at sentencing to the losses that were not the subject of the charged offenses; 2) failing to investigate the accuracy of the criminal history section of the PSR; and 3) failing to provide Kealakekua with a copy of the Plea Agreement and failing to advise him regarding the agreement. The Government responds that the § 2255 Motion fails to establish ineffective assistance because Mr. Otake: presented a vigorous challenge to the amount of loss, and the clear and convincing standard was met; challenged Kealakekua's criminal history score; and carefully explained the Plea Agreement to Kealakekua.

4

**STANDARD**

Section 2255(a) states:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

This district court has described the standards applicable to § 2255 motions as follows:

> A court may dismiss a § 2255 motion if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." R. 4(b), Rules Governing Section 2255 Proceedings. A court need not hold an evidentiary hearing if the allegations are "palpably incredible [or] patently frivolous," <u>Blackledge v. Allison</u>, 431 U.S. 63, 76 (1977) (internal quotation marks and citation omitted), or if the issues can be conclusively decided on the basis of the evidence in the record. <u>See United States v. Mejia-Mesa</u>, 153 F.3d 925, 929 (9th Cir. 1998) (noting that a "district court has discretion to deny an evidentiary hearing on a § 2255 claim where the files and records conclusively show that the movant is not entitled to relief"). Conclusory statements in a § 2255 motion are insufficient to require a hearing. <u>United States v. Johnson</u>, 988 F.2d 941, 945 (9th Cir. 1993). A petitioner must "allege specific facts which, if true, would entitle him to relief." <u>United States v. Rodrigues</u>, 347 F.3d 818, 824 (9th Cir. 2003) (internal quotation marks and citation omitted).

<u>United States v. Sherman</u>, Cr. No. 16-00169 JMS, 2017 WL 4560150, at *1 (D. Hawai`i Oct. 12, 2017) (alteration in <u>Sherman</u>).

5

The issues raised in Kealakekua's § 2255 Motion are legal issues that "can be conclusively decided on the basis of the evidence in the record," including the record of the underlying proceedings. See Mejia-Mesa, 153 F.3d at 929. An evidentiary hearing is therefore unnecessary in this case.

## DISCUSSION

This district court has stated:

> To prevail on an ineffective assistance claim, a petitioner must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). That is, the petitioner must also show that the deficiency was prejudicial. Id. at 692.

> Counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. But, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. See id. at 697. In other words, any deficiency that does not result in prejudice necessarily fails.

United States v. Chaves, Cr. No. 14-00579 JMS (03), 2016 WL 5660327, at *4 (D. Hawai`i Sept. 28, 2016). As to the reasonableness of representation prong, a court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. Kealakekua

bears the burden of proof as to both prongs of the <u>Strickland</u>

analysis.  <u>See</u> <u>Turk v. White</u>, 116 F.3d 1264, 1265 (9th Cir.

1997).

## I.  **Representation Regarding the Plea Agreement**

This Court turns first to Kealakekua's argument that

Mr. Otake rendered ineffective assistance during the period prior

to the entry of the guilty plea.  The <u>Strickland</u> analysis is

applicable to those claims.  <u>See</u> <u>Hedlund v. Ryan</u>, 854 F.3d 577,

576 (9th Cir. 2017) (quoting <u>Hill v. Lockhart</u>, 474 U.S. 52, 57,

106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)).  Kealakekua "must show

that there is a reasonable probability that, but for counsel's

errors, he would not have pleaded guilty and would have insisted

on going to trial."  <u>See</u> <u>Hill</u>, 474 U.S. at 59.  Further, in the

plea context, the <u>Strickland</u> analysis "is based on 'counsel's

judgment and perspective when the plea was negotiated, offered

and entered,' not on a post-adjudication assessment of the case."

<u>Baldwin v. Muniz</u>, Case No. 14-cv-03271-JST(PR), 2016 WL 97454, at

*6 (N.D. Cal. Jan. 8, 2016) (quoting <u>Premo v. Moore</u>, 562 U.S.

115, 126 (2011)).  In <u>Premo</u>, the United States Supreme Court

stated:

> The art of negotiation is at least as nuanced as
> the art of trial advocacy, and it presents
> questions farther removed from immediate judicial
> supervision.  There are, moreover, special
> difficulties in evaluating the basis for counsel's
> judgment: An attorney often has insights borne of
> past dealings with the same prosecutor or court,
> and the record at the pretrial stage is never as

> full as it is after a trial. In determining how
> searching and exacting their review must be,
> habeas courts must respect their limited role in
> determining whether there was manifest deficiency
> in light of information then available to
> counsel. . . .

562 U.S. at 125. The Ninth Circuit has stated that "[t]hough a

mere inaccurate prediction, standing alone, would not constitute

ineffective assistance, the gross mischaracterization of the

likely outcome . . . , combined with the erroneous advice on the

possible effects of going to trial, falls below the level of

competence required of defense attorneys." United States v.

Manzo, 675 F.3d 1204, 1209-10 (9th Cir. 2012) (citation and

quotation marks omitted).

Kealakekua contends that Mr. Otake rendered ineffective

assistance because Mr. Otake failed to "thoroughly review and

discuss the legal terms of" the Plea Agreement with him and

failed to "ensure that defendant possessed a reasonable

understanding of the law in relation to the facts that were

written in" the Plea Agreement. [Mem. in Supp. of § 2255 Motion

at 12.] In particular, Kealakekua asserts that Mr. Otake never

provided him with a copy of the proposed Plea Agreement and, in

reviewing the proposed agreement with Kealakekua, Mr. Otake never

explained the language of 18 U.S.C. § 3742(a) to him. [Id. at

12-14.]

The Ninth Circuit has already held that the waiver of

Kealakekua's appeal rights in the Plea Agreement was valid.

[Dkt. no. 93 (citing <u>United States v. Harris</u>, 628 F.3d 1203, 1205
(9th Cir. 2011) (stating that an appeal waiver is enforceable if
its language encompasses the right to appeal on the grounds
raised and the waiver is knowingly and voluntarily made)).]
Further, at Kealakekua's change of plea hearing, he stated, under
oath, that: he had the opportunity to read the entire Plea
Agreement and discuss it with Mr. Otake before he signed it; and
he understood the terms of the Plea Agreement. [Trans. of
9/30/15 Hrg., filed 4/7/16 (dkt. no. 81), at 3, 5.] The
Government's attorney – Assistant United States Attorney ("AUSA")
Lawrence Tong – then summarized the major terms of the Plea
Agreement, and Kealakekua confirmed that the Government's summary
was what Kealakekua understood his agreement with the Government
to be. Kealakekua also confirmed that he understood the specific
terms that this Court reviewed with him, including his appeal
waiver and the elements of his potential sentence. [<u>Id.</u> at 6-
10.] When asked: "And are you fully satisfied with the legal
representation that you received from [Mr. Otake] and his
office?" Kealakekua responded, "I am." [<u>Id.</u> at 4.]

In the § 2255 Motion, Kealakekua admits affirming his
satisfaction with Mr. Otake's representation, but he states that
"this affirmation was predicated on defendant's belief that trial
counsel was forthright and honest in explaining the details of
the agreement." [§ 2255 Motion at 14.] Kealakekua now claims

9

that Mr. Otake was not forthright and honest because Mr. Otake did not provide him with a copy of the Plea Agreement that he could keep, and Mr. Otake did not explain § 3742(a) to him. However, those are concerns that Kealakekua was aware of at the time of his change of plea hearing and could have raised during his colloquy with this Court and requested more time to consider his plea, but he did not.

Mr. Otake states his "practice has always been to provide [his] clients with copies of their plea agreements when they want it." [Response, Decl. of Thomas Otake ("Otake Decl.") at ¶ 14.] Although Mr. Otake does not have a specific recollection of doing so in this case, he "would assume that [he] would have." [Id.] Even assuming that Kealakekua is correct that Mr. Otake did not provide him with a copy of the Plea Agreement to keep, under the circumstances of this case, the failure to do so did not fall below an objective standard of reasonableness. It is undisputed that Mr. Otake met with Kealakekua at the Federal Detention Center prior to the change of plea hearing, and Kealakekua had the opportunity to review the Plea Agreement. [Mem. in Supp. of § 2255 Motion at 13 ("On September 19, 2015, trial counsel visited defendant and brought a copy of the plea memorandum. . . . [D]efendant proceeded to read through the agreement and notated [sic] changes he wanted the government to make pertaining to counts 11 and 17."); Otake Decl.

at ¶ 15 ("I most definitely sat with Mr. Kealalekkua at the
Federal Detention Center, I believe on September 19, 2015, and
reviewed his plea agreement with him paragraph-by-paragraph,
line-by-line.").] Kealalekua suggested extensive changes, and
AUSA Tong ultimately "agree[d] to almost all the proposed
changes." [§ 2255 Motion, Exh. 10 (email dated 9/23/16 to
Kealalekua from Mr. Otake) at 1.]

The Plea Agreement contains multiple citations to
§ 3742. [Plea Agreement at ¶¶ 13.a-c.] If, as Kealalekua
alleges, he believed Mr. Otake failed to sufficiently explain
§ 3742 to him, he could have raised this issue during the change
of plea hearing, but he did not do so. Kealalekua alleges that,
had he "known he would not be able to appeal based on the
language setforth [sic] in Title 18, U.S.C.S., Section 3742(a),
defendant would not have accepted the plea memorandum." [Mem. in
Supp. of § 2255 Motion at 18.] As previously noted, Kealalekua
confirmed in his colloquy with this Court that he understood the
waiver of his appellate rights, and the Ninth Circuit held that
Kealalekua's appeal waiver was knowingly and voluntarily made.

Viewing the record as a whole, Kealalekua has not
established that Mr. Otake's alleged failure to provide
Kealalekua with a copy of the Plea Agreement and his alleged
failure to explain § 3742 to Kealalekua fell outside of what is
considered competent assistance for purposes of an ineffective

assistance of counsel claim. Further, Kealakekua's claim that, had Mr. Otake provided him with a copy of the Plea Agreement and fully explained § 3742 to him, he would not have pled guilty is palpably incredible in light of the record in this case. Kealakekua fails to establish either that Mr. Otake rendered constitutionally ineffective assistance regarding the Plea Agreement or that Kealakekua was prejudiced by the allegedly deficient representation. Kealakekua's effective assistance of counsel claim fails as to Mr. Otake's representation related to the guilty plea.

## II. **Representation at Sentencing**

The Strickland analysis also applies to § 2255 motions alleging ineffective assistance related to sentencing. See, e.g., United States v. Carlsen, 441 F. App'x 531, 535 (9th Cir. 2011) (applying Strickland analysis to a claim that defense counsel failed to advocate for the application of a relevant provision of the United States Sentencing Guidelines).

### A. **Amount of Loss**

In the § 2255 Motion, Kealakekua argues that his total offense level was determined based on loss amount of $1,531,430.81, which included losses from Counts 11 and 17, the other counts that were dismissed, and other conduct. He contends that, other than the losses from Counts 11 and 17, the losses could only be considered during sentencing if they were proven by

clear and convincing evidence.  Kealakekua alleges that Mr. Otake

rendered ineffective assistance by failing to argue that the

clear and convincing standard applied.  [Mem. in Supp. of § 2255

Motion at 2-4.]

> District courts generally use the
> "preponderance of the evidence standard of proof
> when finding facts at sentencing, such as the
> amount of loss caused by a fraud." United States
> v. Treadwell, 593 F.3d 990, 1000 (9th Cir. 2010).
> The higher clear and convincing standard may
> apply, however, "when a sentencing factor has an
> extremely disproportionate effect on the sentence
> relative to the offense of conviction." United
> States v. Mezas de Jesus, 217 F.3d 638, 642 (9th
> Cir. 2000) (citing United States v. Restrepo, 946
> F.2d 654, 659 (9th Cir. 1991) (en banc)); see also
> Treadwell, 593 F.3d at 1000.  Particularly "where
> a severe sentencing enhancement is imposed on the
> basis of uncharged or acquitted conduct, due
> process may require clear and convincing evidence
> of that conduct." Treadwell, 593 F.3d at 1000.

> Our precedents "have not been a model of
> clarity in deciding what analytical framework to
> employ when determining whether a disproportionate
> effect on sentencing may require the application
> of a heightened standard of proof." United States
> v. Berger, 587 F.3d 1038, 1048 (9th Cir. 2009).
> We have indicated that, "where the sentencing
> enhancements are based on . . . the offense of
> conviction," the preponderance of the evidence
> standard is sufficient. Id. (citing United States
> v. Harrison-Philpot, 978 F.2d 1520, 1524 (9th Cir.
> 1992)) (internal quotation marks omitted).  We
> have also held that "there is no bright-line rule
> for the disproportionate impact test;" instead,
> the court examines the "totality of the
> circumstances" using six factors first articulated
> in United States v. Valensia, 222 F.3d 1173 (9th
> Cir. 2000) ("Valensia factors").[3] Berger, 587

---

[3] Valensia, 222 F.3d 1173, was vacated and remanded "for
(continued...)

F.3d at 1048 (citing <u>United States v. Jordan</u>, 256
F.3d 922, 928 (9th Cir. 2001)) (internal quotation
marks omitted).

Under the <u>Valensia</u> totality of the
circumstances test, six factors, none of which is
dispositive, guide the determination of whether a
sentencing factor has a disproportionate impact on
the sentence:

> (1) whether the enhanced sentence falls
> within the maximum sentence for the crime
> alleged in the indictment; (2) whether the
> enhanced sentence negates the presumption of
> innocence or the prosecution's burden of
> proof for the crime alleged in the
> indictment; (3) whether the facts offered in
> support of the enhancement create new
> offenses requiring separate punishment;
> (4) whether the increase in sentence is based
> on the extent of a conspiracy; (5) whether an
> increase in the number of offense levels is
> less than or equal to four; and (6) whether
> the length of the enhanced sentence more than
> doubles the length of the sentence authorized
> by the initial sentencing guideline range in
> a case where the defendant would otherwise
> have received a relatively short sentence.

<u>Treadwell</u>, 593 F.3d at 1000.

<u>United States v. Hymas</u>, 780 F.3d 1285, 1289-90 (9th Cir. 2015)

(alteration in <u>Hymas</u>) (footnote omitted).

The $1,531,430.81 total loss in this case consisted of:

$490,175.05 for the scheme that was the subject of the indictment

in this case; $924,787.76 for a mortgage fraud scheme deemed

_____

[3](...continued)
further consideration in light of <u>Apprendi v. New Jersey</u>, 530
U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)." <u>Valensia
v. United States</u>, 532 U.S. 932 (2001). However, it did not
affect the totality of the circumstances analysis. <u>See, e.g.</u>,
<u>Berger</u>, 587 F.3d at 1048.

relevant conduct to the charged offenses; and $116,468.00 for a loan fraud scheme in Seattle that was also deemed relevant conduct. [PSR at ¶¶ 97-103.] Kealakekua argues that, if only the losses for Counts 11 and 17 were considered, his base offense level would only have been increased by 6 because the total loss from those offenses was $43,198.87. Instead, the $1,531,430.81 loss resulted in a 17-level increase. [Mem. in Supp. of § 2255 Motion at 2-3.] The Government concedes that "the clear and convincing standard probably applied" to losses from conduct other than the charged offenses. [Response at 14 n.6.]

The Government also concedes that Mr. Otake did not expressly argue that the clear and convincing standard should have been applied to the calculation of the amount of loss. [Id. at 13-14.] Kealakekua's argument is that, had Mr. Otake argued for the application of the clear and convincing standard, only the losses associated with Counts 11 and 17 would have been considered in determining the total amount of loss. However, based on the legal principles set forth above, the clear and convincing standard would not have applied to the conduct that was the basis for the dismissed counts. Thus, the crux of Kealakekua's argument is that the clear and convincing standard applied to the losses from the other conduct deemed relevant conduct for purposes of the amount of loss.

Mr. Otake did in fact argue that the $924,787.76 from the mortgage fraud scheme and the $116,468.00 from the Seattle loan fraud scheme should not be considered in the amount of loss as relevant conduct. Mr. Otake argued that Kealakekua should only be held responsible for a total loss of $172,476.05. [Objections to Proposed Presentence Investigation Report, filed 1/14/16 (dkt. no. 62), at 24-29.[4]]

In light of the lack of clarity in the case law regarding the clear and convincing standard of proof at sentencing, and the fact that Mr. Otake made an argument that, if it had been accepted, would have had the same effect as the argument Kealakekua now contends Mr. Otake should have made, Mr. Otake's failure to expressly argue that the clear and convincing standard applied did not fall "outside the wide range of professionally competent assistance." See Strickland 466 U.S. at 690.

Because Kealakekua has failed to establish the first prong of the Strickland test, this Court does not need to address the issue of whether Kealakekua's sentence would have been different if Mr. Otake had expressly argued that the clear and convincing standard applied. Kealakekua has failed to establish

---

[4] Mr. Otake also made similar arguments in Kealakekua's Sentencing Memorandum. [Filed 2/22/16 (dkt. no. 64), at 9-12.] He also reiterated this position at the sentencing hearing. [Trans. of 2/29/16 Sentencing Hrg. ("Sentencing Trans."), filed 4/22/16 (dkt. no. 83), at 32-33.]

that Mr. Otake rendered constitutionally ineffective assistance during the sentencing process regarding the amount of loss.

### B. **Criminal History Points**

Kealakekua states he repeatedly told Mr. Otake the facts presented in the PSR regarding his criminal history were erroneous, resulting in an incorrect score. Further, Mr. Otake never provided him with an indication he followed up on Kealakekua's concerns and investigated Kealakekua's criminal history. According to Kealakekua, without conducting such investigation, Mr. Otake could not appropriately object to the PSR's determination of the criminal history category. [Mem. in Supp. of § 2255 Motion at 4-5.]

According to the PSR, Kealakekua had six prior convictions, three of which counted toward his criminal history score. [PSR at ¶¶ 118-23.] Those three convictions were: a September 21, 1989 conviction in Georgia for bank fraud in Case No. CR89-213-01A; an April 18, 1991 conviction in Georgia for forgery and other offenses in Case No. 91-B514-5; and a October 25, 2000 conviction in Georgia for forgery and other offenses in Case No. 93-1398-5. Each of the three offenses resulted in three criminal history points. [Id. at ¶¶ 121-23.] An additional two points were added because Kealakekua committed the offenses in the instant case while he was under the October 25, 2000 sentence. Thus, Kealakekua's total criminal

history score was eleven.  [Id. at ¶¶ 125-26.]

Kealakekua argues the three points for Case No. 93-1398-5 should not have been included because the PSR states he was released from prison the same day he was sentenced – October 25, 2000, [Mem. in Supp. of § 2255 Motion at 6 (citing PSR at ¶ 123),] and there is no evidence he actually served a term of imprisonment in Case No. 93-1398-5, [id. at 8]. Kealakekua reasons that, if he never served a term of imprisonment, he could not have served probation following the term of imprisonment.  Thus, he could not have been on probation for Case No. 93-1398-5 when he committed the instant offenses, and the additional two criminal history points should not have been assessed.  [Id.]  Kealakekua also states he does not remember serving a term of imprisonment for Case No. 91-B514-5, and he denies he had his probation revoked in that case on October 25, 2000 for violation of a warrant.  [Id. at 8-9.] Further, he contends there is no evidence to support the Government's statement at sentencing that, according to the probation officer, Kealakekua served more than thirteen months imprisonment for Case. No. 91-B514-5, [id. at 9 (citing Sentencing Trans. at 42),] and he asserts that his sentence for that case should not have counted because it was imposed more than fifteen years before the instant offense, [id. at 10]. According to Kealakekua, without the erroneous inclusion of these

18

prior offenses and the erroneous assessment for commission of the instant offense while on probation, his criminal history score would have been four, resulting in a criminal history category of III. [Id.]

According to Mr. Otake's declaration, Kealakekua did inform Mr. Otake of his concerns that his criminal history score was too high, but "[h]is explanation as to why it should have been lower made no sense." [Otake Decl. at ¶ 26.] In spite of that fact, Mr. Otake "did review in detail the pre-sentence report sections dealing with his criminal history to check for errors or misapplication of the guidelines. [Mr. Otake] found no such error, and found Mr. Kealakekua's explanations as to why his criminal history should be reduced to be unsupported by the facts." [Id.] Nevertheless, Mr. Otake objected to Kealakekua's criminal history category. [Id. at ¶ 27.] The Sentencing Memorandum stated:

> the past cases for which Mr. Kealakekua received criminal history points stem from 1988, 1990, and 1993. **These cases are extremely old**, and were non-violent in nature. Mr. Kealakekua objects to the criminal history calculation in the pre-sentence report, and submits that his criminal history category should be lower than V. In particular, paragraph 123 in the pre-sentence report involves the case from 1993. **Mr. Kealakekua does not recall doing any prison time for this offense.** This is corroborated by what is indicated in the pre-sentence report. The presentence report indicates that Mr. Kealakekua was sentenced to 10 years imprisonment on 10/25/2000, however **it also indicates he was released from prison on 10/25/2000, the same day**

**he was sentenced**.  This case should not count as 3
criminal history points.  This would decrease
Mr. Kealakekua's criminal history category to IV
at the highest.

[Sentencing Mem. at 16-17.]  Mr. Otake reiterated these arguments

at the sentencing hearing.  [Sentencing Trans. at 41-42.]  Thus,

Mr. Otake did make many of the arguments that Kealakekua bases

his ineffective assistance of counsel claim upon.

As to the fact that Kealakekua was released on the same

day he was sentenced for Case No. 93-1398-5, AUSA Tong stated

that the probation officer "confirmed that the only reason he was

released on the same day is he was given for credit for time

served, which I think was in excess of 12 months.  And under that

scenario it would be a qualifying conviction that triggers three

points towards the criminal history score."  [Id. at 42.]  This

Court overruled Kealakekua's objections to his criminal history

score and found that his criminal history "should be category 5,

recognizing that many of those convictions are old, but they

still qualify."  [Id.]  Because Mr. Otake raised the foregoing

arguments during the sentencing process, Kealakekua has failed to

establish that Mr. Otake's "representation fell below an

objective standard of reasonableness" as to those issues.  See

Strickland, 466 U.S. at 688.

The only arguments in the § 2255 Motion that Mr. Otake

did not raise in the sentencing proceedings were: Kealakekua did

not serve more than thirteen months' imprisonment for Case

No. 91-B514-5; there is no evidence to support the assignment of criminal history points for No. 91-B514-5; and Kealakekua was not on probation for Case No. 93-01398-5 when he committed the instant offenses. Even if Mr. Otake had raised these arguments, they would have been rejected. First, although a defendant "must have actually served a period of imprisonment on such sentence" for the sentence to be considered a "sentence of imprisonment" for criminal history purposes, "the length of a sentence of imprisonment is the stated maximum . . . . That is, criminal history points are based on the sentence pronounced, not the length of time actually served." U.S.S.G. § 4A1.2 cmt. n.2. The PSR stated that the stated maximum terms for the counts in Case No. 91-B514-5 were ten years for Counts 1 to 3, five years for Counts 4 to 6, and three years for Counts 7 to 14. [PSR at ¶ 122.] Thus, even if Kealakekua were correct that he actually served less than thirteen months of imprisonment for Case No. 91-B514-5, because his stated maximum was more than thirteen months, three criminal history points were correctly counted for that sentence. See U.S.S.G. § 4A1.1(a) ("Add 3 points for each prior sentence of imprisonment exceeding one year and one month.").

Kealakekua's arguments contesting the factual basis for the inclusion of the sentence in Case No. 91-B514-5 and the addition of two points because the instant offense was committed while he was on probation for Case No. 93-01398-5 would also have

been rejected.  The United States Probation Office ("Probation

Office") had sufficient evidence from the records of the two

cases to support those criminal history points.  See Response,

Decl. of Lawrence L. Tong ("Tong Decl.") at ¶ 2 (stating that,

after he received the § 2255 Motion, he "contacted the United

States Probation Office to obtain the records in its files

concerning defendant's prior convictions").  The records of Case

No. 91-B514-5 confirm the sentence for all counts stated in the

PSR.  [Tong Decl., Exh. 2 (records for Case No. 91-B514-5) at 12

(Final Disposition document).[5]]  Because the sentences were to

run concurrently, the stated maximum for that case was ten years,

and three points were correctly attributed for that sentence.

As to Case No. 93-1398-5, the records the Government

obtained from the Probation Office confirm Kealakekua was

sentenced on October 25, 2000 to ten years of imprisonment, but

was released from custody because he was: given credit for time

served; and allowed to serve the final seven years of the

sentence on probation because he served three years of

imprisonment.  [Tong Decl., Exh. 1 (records for Case No. 93-1398-

5) at 7 (Final Disposition document).]  On August 31, 2004, a

warrant was issued for Kealakekua's arrest because he had not

---

[5] Exhibits 1 and 2 to the Tong Declaration each consist of
multiple documents that are not consecutively paginated.  The
citations to Exhibits 1 and 2 in this order refer to the page
numbers assigned to the exhibits in this district court's
electronic case filing system.

reported to Probation since being released on October 25, 2000 and he changed his residence without obtaining prior permission from his probation officer. [Id. at 12.] A Georgia state court issued an order on June 28, 2006, stating that the running of Kealakekua's term of probation was suspended until Kealakekua "personally report[ed] to the probation supervisor, is taken into custody in this state, or is otherwise available to this Court." [Id. at 11.] Thus, two points were correctly added to Kealakekua's criminal history score because, at the time of the instant offenses, he was still subject to the term of probation for Case No. 93-1398-5.

Moreover, in imposing Kealakekua's sentence, this Court departed from the Guidelines sentencing range because it recognized that his "criminal history may be overrepresented." [Sentencing Trans. at 67.] The Guidelines sentencing range that would have applied to him with an offense level of 24 and a criminal history category of V was 92 to 115 months of imprisonment. [Id. at 63.] However, Kealakekua was sentenced to 84 months of imprisonment, which was "squarely in the middle of" the Guidelines sentencing range for an offense level of 24 and a criminal history category of IV, which was 77 to 96 months. [Id. at 67.] Thus, even if Mr. Otake had raised the three arguments Kealakekua alleges he should have raised and this Court accepted some of those arguments, there is not a reasonable probability

that the sentence would have been lower because the actual
sentence imposed already reflected a lower criminal history
category.

Kealakekua has therefore failed to establish that his
sentence would have been different if Mr. Otake had raised the
arguments challenging the points associated with Case No. 91-
B514-5 and the points attributed because of the commission of the
instant offense while on probation for Case No. 93-1398-5.
Because there was no prejudice as a result of the failure to
present these arguments, it is not necessary to address whether
Mr. Otake's representation was deficient because he did not raise
these arguments. See Strickland, 466 U.S. at 697. Kealakekua
has failed to establish that Mr. Otake rendered constitutionally
ineffective assistance during the sentencing process regarding
Kealakekua's criminal history score.

Because Kealakekua has failed to prove any of the
alleged instances of ineffective assistance, his § 2255 Motion is
denied.

### III. **Certificate of Appealability**

This district court has stated that:

In dismissing a § 2255 motion, the court must
also address whether [defendant/petitioner] should
be granted a certificate of appealability ("COA").
See R. 11(a), Rules Governing Section 2255
Proceedings (providing that "[t]he district court
must issue or deny a certificate of appealability
when it enters a final order adverse to the
applicant"). A COA may issue only if the

petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

"The standard for a certificate of appealability is lenient."  <u>Hayward v. Marshall</u>, 603 F.3d 546, 553 (9th Cir. 2010) (en banc), *overruled on other grounds by* <u>Swarthout v. Cooke</u>, 562 U.S. 216 (2011).  The petitioner is required to demonstrate only "that reasonable jurists could debate the district court's resolution or that the issues are adequate to deserve encouragement to proceed further."  <u>Id.</u> (citation and internal quotation marks omitted).  The standard "requires something more than the absence of frivolity, but something less than a merits determination."  <u>Id.</u> (internal quotation marks omitted).

The court carefully reviewed [the defendant/petitioner's] assertions and gave him every benefit by liberally construing them.  Based on the above analysis the court finds that reasonable jurists could not find the court's rulings debatable.

<u>Leon v. United States</u>, Civ. No. 15-00099 JMS-BMK, 2015 WL 3965895, at *9-10 (some alterations in <u>Leon</u>).  Reasonable jurists would not find that the rulings in this Order regarding Kealakekua's § 2255 Motion are debatable.  A certificate of appealability therefore will not be issued.

## CONCLUSION

On the basis of the foregoing, Kealakekua's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed December 5, 2016, is HEREBY DENIED.  In addition, this Court DENIES a certificate of appealability.

In light of these rulings, Kealakekua's Motion for Decision, [filed 8/17/17 (dkt. no. 119),] is HEREBY DENIED AS MOOT.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, January 16, 2018.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**UNITED STATES OF AMERICA VS. JULIAN KEALAKEKUA; CR 14-00374 LEK; ORDER DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY AND DENYING A CERTIFICATE OF APPEALABILITY**